**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ELLENBY TECHNOLOGIES, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.** |
| | _____ |
| **FIREKING SECURITY GROUP,** | |
| **FIREKING SECURITY PRODUCTS, LLC,** | |
| **FIREKING COMMERCIAL SERVICES, LLC,** | |
| **CORPORATE SAFE SPECIALISTS, LLC, and** | |
| **PFINGSTEN PARTNERS LLC,** | |
| **DEFENDANTS.** | |

<u>**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**</u>

Plaintiff Ellenby Technologies, Inc. ("ELLENBY") files this Original Complaint for infringement of ELLENBY's U.S. Patent No. 7,779,983 ("the '983 patent) against each of the DEFENDANTS identified in the caption above and further identified below, and alleges as follows:

**THE PARTIES[1]**

1.    ELLENBY is a New Jersey corporation with its principal place of business at 412 Grandview Ave, Woodbury Heights, NJ 08097.

---

[1]    The unnumbered, bold headings herein are provided for the convenience of the reader and are not intended to limit the Complaint in any way.

2.    FireKing Security Group (without a space between "Fire" and "King") is an unincorporated entity and a collective term used by Pfingsten Partners LLC (hereinafter "PFINGSTEN") to refer to certain file cabinet and safe businesses that it has in the past and now manages and controls, including the other Defendants identified in paragraphs 3-5 below. FireKingSecurity Group has regular and established places of business in this district and division at 8200 185th St., Suite J, Tinley Park, IL 60487 and at 300 North LaSalle Street, Suite 5400, Chicago, IL 60654. The term "FireKing Security Group" also has been registered in the State of Illinois as an assumed name of Fire King Commercial Services, LLC, the Defendant identified in the next paragraph.

3.    Fire King Commercial Services, LLC, is an Indiana limited liability company, which has regular and established places of business in this district and division at 8200 185th St., Suite J, Tinley Park, IL 60487 and at 300 North LaSalle Street, Suite 5400, Chicago, IL 60654. This defendant has designated Illinois Corporate Service C, 801 Adlai Stevenson Drive, Springfield, IL 62703 as a registered agent for service in Illinois.

4.    Fire King Security Products, LLC, is an Indiana limited liability company, which has regular and established places of business in this district and division at 8200 185th St., Suite J, Tinley Park, IL 60487 and at 300 North LaSalle Street, Suite 5400, Chicago, IL 60654. This defendant has designated Illinois Corporate Service C, 801 Adlai Stevenson Drive, Springfield, IL 62703 as a registered agent for service in Illinois.

5.    Corporate Safe Specialists, LLC, is an Delaware limited liability company, which has regular and established places of business in this district and division at 8200 185th St., Suite J, Tinley Park, IL 60487 and at 300 North LaSalle Street, Suite 5400, Chicago, IL 60654. The business of this defendant has been consolidated with that of one or more of FireKing Security Group, Fire King Security Products, LLC and Fire King Commercial Services, LLC.

2

6.      Pfingsten Partners LLC (hereinafter "PFINGSTEN") is a Delaware limited liability company ("LLC") having its principal place of business at 300 North LaSalle Street, Suite 5400, Chicago, IL 60654, in this district and division. This defendant has designated Illinois Corporate Service C, 801 Adlai Stevenson Drive, Springfield, IL 62703 as a registered agent for service in Illinois.

7.      FireKing Security Group, Fire King Security Products, LLC, Fire King Commercial Services, LLC and Corporate Safe Specialists, LLC are referred to collectively herein as "FIREKING" or "the FIREKING Entities," and those Defendants are collectively referred to with PFINGSTEN as "DEFENDANTS."

## JURISDICTION AND VENUE

8.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. Section 1 *et seq.*

9.      Subject matter jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has personal jurisdiction over each of the DEFENDANTS by virtue of their places of business and doing business within this district and division.

11.     Venue is proper in this judicial district under 28 U.S.C. § 1400(b) with respect to each of DEFENDANTS because it has a regular and established place of business in this district and it has committed acts of infringement in this district further identified below.

## BACKGROUND: SMART SAFES

12.     This civil action and the '983 patent relate to improvements in the security of electronic "Smart Safes," also called Intelligent Safes, used— for example—in convenience stores, gas stations, and fast food restaurants.

3

13.     Smart Safes are typically sold by FIREKING directly to users, or to banks, Cash in Transit (CIT) companies or armored car companies, which sell or lease them to users.

14.     Before Smart Safes, retail businesses at risk of robbery frequently had simple "drop safes" with a slot for depositing money.

15.     Smart Safes are secure vaults (safes) including a bill acceptor, also known as bill or banknote acceptors (*i.e.*, devices that receive and determine if a bank note or piece of currency is counterfeit or otherwise unacceptable).

16.     A Smart Safe typically includes one or two electronic bill acceptors and one or two bill canisters (cassettes) for receiving currency, in a safe housing.

17.     The electronic bill acceptor determines the validity and value of currency as it is inserted and places the validated currency inside the cash box.

18.     A Smart Safe's electronic controller typically keeps track of the amount of currency deposited, who deposited the currency and when it was deposited.

19.     In addition to the security provided by Smart Safes, an advantage of Smart Safes is that management time is saved because the deposited currency does not have to be sorted and counted by a manager.

20.     In some cases, Smart Safes are electronically connected to transmit information concerning the deposits to a bank or a Cash in Transit ("CIT") company, so that the bank or CIT company can advance funds to the user, based on the value of banknotes deposited in the safe, as determined by the bill acceptor.

21.     Prior to ELLENBY' inventions of the '983 patent and ELLENBY's related U.S. Patent No. 7,516,832 (the "'832 patent")the bill acceptor and the cash box of the old type Smart Safes typically were housed together with a single access door for both the bill acceptor and the cash

4

canister.

22.     Because both components were behind a single access door in old type Smart Safes, any person who opened the single access door to access the bill acceptor would also have complete access to the cash canister. Thus, simple bill jams within a bill acceptor typically required a service call, since access to the bill acceptor for maintenance required access to the bill canister as well. Therefore, Smart Safes were typically arranged so that the acceptor could not be removed by persons other than those authorized to remove the cash, and service calls to repair or clear a jam in the bill acceptor, typically required the presence of an armed guard.

## ELLENBY AND THE '983 PATENT

23.     Founded in 1988, ELLENBY is a developer and manufacturer of electronic Smart Safes. One representative product line of ELLENBY's Smart Safes is known as CashTrak Electronic Safes.

24.     Bob M. Dobbins, ELLENBY's CEO and owner, invented the improvements disclosed and claimed in the '983 patent and in the related '832 patent (not asserted in this civil action). A true and correct copy of the '983 patent is attached hereto as Exhibit 1.

25.     A key feature disclosed and claimed in Dobbins' patent applications, and in the resulting '983 patent, was a shelf attached to the canister compartment's door, which limited access to the cash canister from the bill acceptor compartment when the canister compartment door was closed.

26.     Mr. Dobbins' invention obviated the need for a separate service call in most cases, because it allowed authorized store personnel—such as a manager—to service any mechanical problems with the bill acceptor—such as a bill jam—without allowing that person access to the

cash-receiving canister.

27.    The inventions claimed in ELLENBY's '983 and '832 patents have rendered the old

type Smart Safes obsolete.

28.    The '983 patent claims the priority of Mr. Dobbins' U.S. Provisional Patent

Application No. 60/496,515, filed August 5, 2004.

29.    The United States Patent and Trademark Office ("USPTO") duly and properly issued

the '983 patent on August 24, 2010.

30.    The '983 patent was duly assigned to ELLENBY, which is the assignee of all right,

title, and interest in and to the '983 patent and possesses the exclusive right of recover for past,

present, and future infringement.

31.    Each and every claim of the '983 patent is valid and enforceable.

32.    ELLENBY clearly marks and has always clearly marked its products that embody its

patented inventions with the numbers of related patents, including that of the asserted '983 patent.


**DEFENDANTS' PERTINENT BUSINESS ORGANIZATION**

33.    PFINGSTEN is a private equity company, which manages and controls "Portfolio

Companies" and investment funds.

34.    The FireKing Security Group has been a Portfolio Company of PFINGSTEN, in the

businesses of making, offering for sale, selling and using file cabinets and safes since

PFINGSTEN acquired control of the predecessor FKI Security Group and related companies in

September 2010.

35.    The FireKing Security Group part of PFINGSTEN's website,

www.pfingsten.com/portfolio/detail/17-fireking-security-group, last viewed on March 30, 2020,

states that the "FireKing Security Group" was "Acquired: September 2010."

36.     In particular, PFINGSTEN created a limited liability company, named FK Acquisitions, LLC, a Delaware LLC, which merged with and thereby acquired Fire King International, LLC, an Indiana LLC, and the seller's FireKing Security Group and Image Vault.

37.     PFINGSTEN has created and distributed several companies to continue the businesses previously operated by Fire King International, LLC , FireKing Security Group and Image Vault, and distributed the acquired assets among its companies including:

     a.  FKI Security Group, LLC, a Delaware LLC,

     b.  Fire King International, LLC, an Indiana LLC,

     c.  Fire King Security Products, LLC, an Indiana LLC, and

     d.  Fire King Commercial Services, LLC, an Indiana LLC.

38.     In about May 2011, PFINGSTEN acquired Corporate Safe Specialists, Inc. and continued that business under its management and control as a part of its FireKing Security Group.

## COUNT ONE: INFRINGEMENT OF U.S. PATENT NO. 7,779,983
## BY FIREKING IN VIOLATION OF 35 U.S.C. §271(a)

39.     ELLENBY realleges and incorporates by reference paragraphs 1-38 above, as if fully set forth herein.

40.     ELLENBY alleges that the each of Claims 3, 4 and 5 of the '983 patent is directly and literally infringed by the FIREKING Entities making, offering for sale, selling and using at least FIREKING's Summit, Ascent UNA, CX and NKL Autobank Series safe products, and any others of their products that are not colorably different with respect to the claimed features (hereinafter "ACCUSED PRODUCTS").

41.     The Claims of the '983 patent are:

**1**. An electronic drop safe comprising:

a bill acceptor for accepting bills mounted in a first compartment within a housing;

a bill canister for storing bills mounted in a second compartment within the housing, wherein said bill canister is

located behind an access door, said access door having a lock which must be opened to access the bill canister and isolating the bill acceptor from the bill canister when the access door is closed; and

a reinforcement shelf positioned between said first compartment and said second compartment limiting the access to the canister when the door is closed.

**2**. The electronic drop safe of claim **1** where said lock can be mechanical or electronic.

**3**. The electronic drop safe of claim **1** where said reinforcement shelf is incorporated on said access door.

**4**. An electronic drop safe comprising:

a bill acceptor mounted in a first compartment within a housing; and

a bill canister for storing bills mounted in a second compartment within the housing, wherein said second compartment has a lockable door, where said second compartment lockable door is provided with a shelf to limit access to the second compartment from the first compartment when the lockable door is closed and locked.

**5**. An electronic drop safe comprising:

a bill acceptor for accepting bills mounted in a first compartment within a housing;

a bill canister for storing bills mounted in a second compartment within the housing, wherein said bill canister is located behind an access door, said access door having a lock which must be opened to access the bill canister and isolating the bill acceptor from the bill canister when the access door is closed, where said access door is provided with a reinforcement shelf to limit the access to the bill canister when the bill acceptor is removed from the housing.

42.     The ACCUSED PRODUCTS correspond to the combinations of elements claimed in Claims 3, 4 and 5 of the '983 patent.

43. Each of the ACCUSED PRODUCTS is an "electronic drop safe," as claimed in Claims 3-5 of the '983 patent.

44. Each of the ACCUSED PRODUCTS includes at least one "bill acceptor for accepting bills mounted in a first compartment within a housing," as claimed in Claim 3 and at least one "bill acceptor mounted in a first compartment within a housing," as claimed in Claim 4 and 5 of the '983 patent.

45. Each of the ACCUSED PRODUCTS include at least one "bill canister for storing bills mounted in a second compartment within the housing," as claimed in Claims 3-5 of the '983 patent.

46. In each of the ACCUSED PRODUCTS, the shelf is incorporated on said door, as claimed in Claim 3 of the '983 patent, and the is door provided with a shelf to limit access to the bill canister and its compartment as claimed in claims 4-5 of the '983 patent.

47. PHOTO 1 below shows the exterior of a FIREKING Summit series Smart Safe, showing two bill acceptors in an opening in the safe front and a closed door below:

**PHOTO 1**



48.     PHOTO 2 below shows the FIREKING Summit series Smart Safe with the door open

and a bill canister in the compartment below each of the bill acceptors:

**PHOTO 2**



49.     PHOTO 3 below shows the FIREKING Summit series Smart Safe with the door open,

and the bill acceptors and bill canisters removed, with a caption indicating first compartments for

mounting a bill acceptor and second compartments for mounting a bill canister, as claimed in

Claims 3-5 of the '983 patent:

**PHOTO 3**



50.     PHOTO 3 also shows the shelf, mounted on the door, as claimed in Claims 3-5 of the '983 patent.

51.     The bill acceptor support, shown at the bottom of each bill acceptor compartment in PHOTO 3, corresponds to the dividing plate disclosed in the '983 patent and delineates the first compartment from the second compartment.

52.     ELLENBY has provided a detailed claim chart to FIREKING pointing out the correspondence of ACCUSED PRODUCTS with the Claims 3, 4 and 5 of the '983 patent, in March 2018 .

Equivalents

53.     To the extent that the fact finder may find that components of the ACCUSED PRODUCTS do not literally correspond to claimed elements, ELLENBY asserts that those elements of the Claims are infringed under the Doctrine of Equivalents, because those components of the ACCUSED PRODUCTS are insubstantially different from the elements of Claims 3-5 of the '983 patent; and because those components perform substantially the same function, in substantially the same way and provide the same result as the claimed elements.

54.     In particular and without limitation, the space above the acceptor support that is

aligned with the acceptor opening in the front panel of the ACCUSED PRODUCTS, is equivalent to the "first compartment" claimed in Claims 3-5 of the '983 patent.

55.     In particular and without limitation, the space below the acceptor support, used as the canister storage area in the ACCUSED PRODUCTS, is equivalent to the "second compartment" claimed in Claims 3-5 of the '983 patent.

56.     In particular and without limitation, the inwardly projecting shelf or ledge on door in the ACCUSED PRODUCTS is equivalent to the "shelf" claimed in Claims 3-5 of the '983 patent.

57.     By their actions, the FIREKING entities have injured ELLENBY, are liable for their actions as a single enterprise with respect to the acts of infringement plead herein, and are jointly and severally liable to ELLENBY for infringement of the '983 patent pursuant to 35 U.S.C. § 271(a).

## Damages

58.     ELLENBY seeks a reasonable royalty for DEFENDANTS' infringement of the '983 patent.

59.     A reasonable royalty should take account of and be based on the savings FIREKING's customers experience by use of the patented invention as compared with old type Smart Safes.

60.     The '983 patent and ELLENBY's related 832 patent (not asserted against in this civil action) enable the Smart Safe users to avoid the expense of having an armed guard accompany a person servicing the bill acceptor in a Smart Safe as discussed above or alternatively allows an employee at the site to service the bill acceptor without the need for a service technician.

61.     Most of FIREKING's ACCUSED PRODUCTS include two acceptors and the royalty calculation should take account of the savings with respect to each acceptor.

62.     A reasonable royalty should not only take account of and be based on the income

DEFENDANTS have obtained from sales of ACCUSED PRODUCTS, but also their income from convoyed sales of ancillary products and software sold for use with ACCUSED PRODUCTS, and from servicing of ACCUSED PRODUCTS and such ancillary products and software, which they would not have received but for their infringing acts.

63.     FIREKING will continue to infringe the '983 patent unless enjoined by this Court.

## COUNT TWO: FIREKING's ACTIVE INDUCEMENT OF INFRINGEMENT BY THIRD PARTY USERS OF ITS ACCUSED PRODUCTS IN VIOLATION OF 35 U.S.C. §271(b)

64.     ELLENBY realleges and incorporates by reference paragraphs 1-63 above, as if fully set forth herein.

65.     Third parties, such as armored car companies, banks, CIT companies, restaurants and stores, offer for resale, resell and use the ACCUSED PRODUCTS in the United States.

66.     Such offering for resale, resale and use of the ACCUSED PRODUCTS constitutes infringement of Claims 3, 4 and 5 of the '983 patent, in violation of 35 U.S.C. §271(a).

67.     FIREKING actively induces infringement by such third parties of Claims 3, 4 and 5 of the '983 patent, in violation of 35 U.S.C. §271(b), by actively inducing offering for resale, resale and use of the ACCUSED PRODUCTS by such third parties.

68.     FIREKING was aware of the application that matured into ELLENBY's '983 patent at least as early as August 2013, when an Examiner cited the ELLENBY's published application for that patent, U.S. Patent Publication 2009/0166152 ("Dobbins") as relevant as prior art in FIREKING's U.S. Patent Application Serial No. 10/903,119 (the "'119 patent application"),

which later matured into FIREKING's U.S. Patent No. 8,348,043 (the "'043 patent").

69.  In particular, the Examiner cited the shelf 270 disclosed in ELLENBY's Patent Publication 2009/0166152 (and in the '983 patent), equating it with the ledge disclosed and claimed in FIREKING's patent application, in these words:

> Dobbins further discloses said bill validator 201 being removable without unlocking said primary lock 220 (see Figures 3 and 4), and release mechanism 101 that secures said bill validator within said housing. Still further, said door 102 includes rearwardly extending ledge 270 that limits access to said cassette, and bill validator lock 210.

70.  It should be presumed that the citation of that publication brought the '983 patent to the attention of FIREKING in 2013, because a reasonable person designing Smart Safes and knowing of that publication would inquire about whether any related patents had issued, and the '983 patent had been issued in 2010.

71.  ELLENBY specifically informed FIREKING of the '983 patent and its relevance to the ACCUSED PRODUCTS in February 2015, when offered FIREKING a license under its patents, including the '983 patent.

72.  As a result of these events, FIREKING knew or should have known that the induced and inducing acts described herein constitute infringement of '983 patent.

73.  FIREKING takes active steps to promote and encourage the offering for resale, resale and use of its ACCUSED PRODUCTS by third parties, such as armored car companies, banks, CIT companies, restaurants and stores, knowing that those steps will induce, encourage and facilitate direct infringement by others.

74.  Such active steps include, but are not limited to, advertising (including by internet websites), promoting and instructing others to use and how to use the ACCUSED PRODUCTS.

14

75.     Any belief concerning invalidity of a patent is not pertinent to whether or not infringement of the patent has been actively induced, as a matter of law.

76.     By its actions, FIREKING has injured ELLENBY and is liable to ELLENBY for infringement of the '983 patent pursuant to 35 U.S.C. § 271(b).

### COUNT THREE: PFINGSTEN's LIABILITY FOR INFRINGEMENT PURSUANT TO 35 U.S.C. §271(a) & (b)

77.     ELLENBY realleges and incorporates by reference paragraphs 1-76 above, as if fully set forth herein.

78.     PFINGSTEN is liable for each of the acts of infringement of the '983 patent by FIREKING because

    a.     PFINGSTEN has actively induced the acts of infringement by FIREKING in violation of 35 U.S.C. §271(b);

    b.     The FIREKING Entities performed their acts of infringement as agents of PFINGSTEN; and

    c.     The FIREKING Entities are alter egos of PFINGSTEN.

79.     The FIREKING Entities are managed and controlled by PFINGSTEN so as to maximize the flow of the FIREKING Entities income to PFINGSTEN and one or more investments funds managed by PFINGSTEN through fees and distribution of profits.

80.     PFINGSTEN has caused substantially all of the assets of FIREKING to be subject to security interests, and has caused distribution from income of FIREKING to PFINGSTEN and one or more of its investment funds, so that FIREKING is likely to lack the funds to pay the damages sought in this civil action.

81.     The availability of funds to FIREKING to pay any damages in this civil action has been and continues to be controlled by PFINGSTEN.

82.     The FIREKING Entities are managed and controlled by PFINGSTEN as an integrated enterprise, sharing facilities, officers and assets, and do not operate in a "arms length" relationship with each other or with PFINGSTEN.

83.     For example, PFINGSTEN and the FIREKING entities have the same principal place of business address, namely, "c/o PFINGSTEN Partners LLC at 300 North LaSalle Street, Suite 5400, Chicago, IL 60654," as shown by a Security Interest Assignment dated as of April 4, 2014, recorded in the USPTO.

84.     For example, the Security Interest Assignment dated as of April 4, 2014 was signed by the same person, Mark G. Essig, as Chief Executive Officer of each of the seven of the assignors, including FK Acquisitions, Inc., FKI Security Group, LLC, Fire King International, LLC, Fire King Security Products, LLC, Fire King Commercial Services, LLC, Corporate Safe Specialists, LLC and Image Vault, LLC.

85.     Also, for example, a Security Interest Assignment dated as of December 20, 2019 was signed by the same person, Michael Lynch, as Chief Financial Officer of each of the assignors, which were Corporate Safe Services, LLC, Fire King Security Products, LLC, Image Vault, LLC, Fire King Commercial Services, LLC, FK II, LLC and FK III, LLC.

86.     The FIREKING Entities and related companies all identify themselves in literature and their shared website, www.fireking.com, by the tradename "FireKing Security Group," without any indication of corporate or LLC status, or of separate entity names.

87.     Literature of the FIREKING Entities and related companies, including webpages, are marked as copyrighted by "FireKing Security Group," without any indication of corporate or LLC status, or of separate entity names.

88.     The FIREKING Entities and related companies all use the "FireKing" trademark.

16

89.     PFINGSTEN reorganized the FireKing Security Group in 2019, separating parts of its business relating to fire resistant filing cabinets and conventional safes from parts of its business relating to Smart Safes and cash management systems, allocating various assets to different companies.

90.     PFINGSTEN caused the creation of FK II, LLC and FK III, LLC as Delaware LLCs, on July 3, 2019.

91.     PFINGSTEN caused certain patents and trademarks relating to the businesses of FIREKING and related companies controlled by PFINGSTEN to be assigned by FKI Security Group, LLC to FK II, LLC, pursuant to a Reorganization Agreement, by assignment dated as of December 18, 2019. Included was Registration No.4,978,791 for the trademark ASCENT, which is used in connection with some of the FIREKING products which this Complaint asserts infringe ELLENBY's '983 patent.

92.     PFINGSTEN caused one or more patents and trademark registrations relating to the businesses of FIREKING and related companies controlled by PFINGSTEN to be assigned by FKI Security Group, LLC to FK III, LLC, pursuant to a Reorganization Agreement, by assignment dated as of December 18, 2019.

93.     As of December 20, 2019, PFINGSTEN caused FKI Security Group to sell Fire King International, LLC and the FireKing Office & Consumer Products Division, which had been FIREKING's business relating to fire resistant filing cabinets and conventional safes, to Champlain Capital Partners LLC, retaining ownership, management and control of FIREKING and its business relating to Smart Safes and cash management systems.

94.     The relevant transactions among the FIREKING Entities and their relevant transactions with PFINGSTEN are not conducted independently and at arms length, but—rather—are managed

and controlled by PFINGSTEN.

95. The decision of whether or not FIREKING would pay ELLENBY for a license under the '983 patent has been and would be controlled by PFINGSTEN.

96. By its actions as outlined herein, PFINGSTEN has injured ELLENBY and is jointly and severally liable with the FIREKING Entities to ELLENBY for their actions constituting a single enterprise with respect to the acts of infringement plead herein, and with the FIREKING Entities are jointly and severally liable to ELLENBY for infringement of the '983 patent.

## COUNT FOUR: WILLFUL INFRINGEMENT BY DEFENDANTS

97. ELLENBY realleges and incorporates by reference paragraphs 1-96 above, as if fully set forth herein.

98. In particular, and without limitation, the facts alleged in COUNTS TWO and THREE above are especially pertinent to the willfulness of DEFENDANTS' infringement.

99. DEFENDANTS could not reasonably believe that their actions do not constitute infringement of the '983 patent, nor could they reasonably believe that the patent is invalid.

100. DEFENDANTS have been aware of the disclosures contained in ELLENBY's '983 patent, the general nature of its claims and their relevance to ACCUSED PRODUCTS since at least as early as August 2013, when FIREKING learned of ELLENBY's U.S. Patent Publication 2009/0166152.

101. DEFENDANTS have been specifically aware of the'983 patent, its claims and their relevance to ACCUSED PRODUCTS since at least as early as February 2015, when FIREKING received ELLENBY's offer of a license.

102. Since learning of ELLENBY's aforesaid patent applications and patents, FIREKING has continued to expand on its infringing Smart Safe designs despite not having a license to

ELLENBY's patents.

103.   FIREKING lacked a reasonable basis for believing that it was not infringing Claims 3, 4 and 5 of the '983 patent, or that those claims were invalid within a reasonable period of time after it became aware of the '983 patent.

104.   PFINGSTEN lacked a reasonable basis for believing that it was not infringing Claims 3, 4 and 5 of the '983 patent or that those claims were invalid within a reasonable period of time after it became aware of the '983 patent.

105.   FIREKING lacked a reasonable basis for believing that it was not infringing Claims 3, 4 and 5 of the '983 patent or that those claims were invalid when it designed and offered for sale the accused SUMMIT series of smart safes, released in 2014.

106.   PFINGSTEN lacked a reasonable basis for believing that it was not infringing Claims 3, 4 and 5 of the '983 patent or that those claims were invalid when it authorized FIREKING to design and offer for sale the accused SUMMIT series of smart safes, released in 2014.

107.   FIREKING lacked a reasonable basis for believing that it was not infringing Claims 3, 4 and 5 of the '983 patent or that those claims were invalid when it designed and offered for sale the accused ASCENT series of smart safes, launched in September 2015.

108.   PFINGSTEN lacked a reasonable basis for believing that it was not infringing Claims 3, 4 and 5 of the '983 patent or that those claims were invalid when it authorized FIREKING to design and offer for sale the ASCENT series of smart safes, launched in September 2015.

109.   FIREKING and PFINGSTEN lacked a reasonable basis for believing that they were not infringing Claims 3, 4 and 5 of the '983 patent or that those claims were invalid when FIREKING used ACCUSED PRODUCTS, including those in possession of third parties, by servicing them after they each became aware of the '983 patent

19

110. FIREKING and PFINGSTEN continue to lack a reasonable basis for believing that they are not infringing Claims 3, 4 and 5 of the '983 patent or that those claims were invalid, and are likely to continue their willful infringement by making, using, offering for sale and selling ACCUSED PRODUCTS unless they are enjoined.

111. DEFENDANTS were aware of ELLENBY's invention and its relevance to FIREKING's Smart Safe products as a result of information they obtained in connection with DEFENDANTS' own patent applications.

112. DEFENDANTS' noninfringement arguments also rest on unsupportable claim constructions that import limitations that simply do not exist in the patents.

113. Like all U.S. patents, the '983 patent is presumed to be valid as a matter of law and that presumption can only be overcome by clear and convincing evidence.

114. DEFENDANTS' invalidity arguments primarily rest on a reference— U.S. Patent Publication No. 202/0100399 (Young)—that was considered by the PTO during prosecution of the '983 patent.

115. ELLENBY overcame the Examiner's rejections based on Young with respect to all of the claims in the '983 patent.

116. The presumption of validity of the '983 patent is enhanced with respect to Young by the facts that the Examiner considered, cited and discussed that publication, and allowed the claims of the '983 patent with knowledge of Young.

117. DEFENDANTS' assertions that the asserted claims of ELLENBY's '983 patent are obvious are also inconsistent with the fact that FIREKING itself sought to patent substantially the same invention in original claim 15 of its '119 patent application, filed after ELLENBY's priority application.

118.    DEFENDANTS' infringement of the '983 patent, with knowledge of the '983 patent and its relevance to the ACCUSED PRODUCTS, without seeking a license, is willful and deliberate, entitling Plaintiffs to increased damages pursuant to 35 U.S.C. § 284, and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

PRAYER FOR RELIEF

Wherefore, ELLENBY respectfully requests that this Court enter judgment against each of the DEFENDANTS as follows:

a.    that each of the Asserted Patents has been infringed by DEFENDANTS;

b.    that DEFENDANTS' infringement of the Asserted Patents has been willful;

c.    awarding of damages pursuant to adequate to compensate ELLENBY for the patent infringement that has occurred, together with pre-judgment interest and costs;

d.    awarding all other damages permitted by 35 U.S.C. § 284, including increased damages of to three times the amount of compensatory damages found;

e.    ordering payment of an ongoing royalty for FIREKING's post-verdict infringement, payable with respect to each product offered by FIREKING that is found to infringe the '983 patent asserted herein, and with respect to all future products that are not colorably different from those found to infringe.

f.    permanently enjoining DEFENDANTS pursuant to 35 U.S.C. § 283 from further infringement with respect to each product offered by FIREKING that is found to infringe the '983 patent asserted herein, and with respect to

all future products that are not colorably different from those found to

infringe, unless said ongoing royalty is paid in a timely fashion;

g.      finding that this is an exceptional case and awarding to ELLENBY its costs

and reasonable attorneys' fees incurred in this action as provided by 35

U.S.C. § 285; and

h.      awarding such other relief, including other monetary and equitable relief, as

is just and proper.

Dated:  April 10, 2020                          Respectfully submitted,


                                                ____/s/ Richard P. Beem_____
                                                John S. Goetz (*pro hac vice* to be requested)
                                                John B. Pegram (*pro hac vice* to be requested)
                                                Fish & Richardson P.C.
                                                7 Times Square, 20th Floor
                                                New York, NY 10036
                                                Telephone: 212-765-5070
                                                Facsimile: 212-258-2291

                                                Richard P. Beem
                                                Alex Shtraym
                                                Beem Patent Law Firm
                                                53 West Jackson, Suite 1352
                                                Chicago, IL 60604
                                                Telephone:  312-201-0011
                                                Facsimile:  312-201-0022

                                                Attorneys for Plaintiff Ellenby Technologies, Inc.