IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELLENBY TECHNOLOGIES, INC., )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>)<br>)<br>FIREKING SECURITY GROUP, )<br>FIREKING SECURITY PRODUCTS, )<br>LLC, FIREKING COMMERCIAL )<br>SERVICES, LLC, CORPORATE )<br>SAFE SERVICES, LLC, )<br>and PFINGSTEN PARTNERS, LLC. )<br>)<br>   Defendants. ) | No. 20 C 2253<br><br>Judge Steven C. Seeger<br>Magistrate Judge Gabriel A. Fuentes |

**MEMORANDUM OPINION AND ORDER**

     The late U.S. District Judge Milton I. Shadur liked to say that motions to reconsider were found nowhere in the Federal Rules of Civil Procedure. *Zakutansky v. Bionetics Corp.,* No. 92 C 2002, 1992 WL 390898, at *1 (N.D. Ill. Dec. 16, 1992). Rule 54(b) authorizes district courts to revisit interlocutory orders, without specifying a mechanism for a motion to "reconsider." The motion to reconsider now before the Court (D.E. 73; "Mot.") presents an opportunity to discuss (1) the tone in which courts might respond to these motions, and (2) whether patent litigation ought to be stayed before the U.S. Patent and Trademark Office's Patent Trial and Appeals Board ("PTAB") has decided whether to institute *inter partes* review ("IPR") of the patent in suit. The Court previously entered a relatively brief order denying without prejudice such a stay in this case. (D.E. 71.) Defendants here have asked the Court to look at that ruling again. The Court will do so in the form of this Memorandum Opinion and Order, having found the foregoing two issues worthy of greater discussion.

**I.       Factual and Legal Background**

   **A.  Posture of the Case**

Plaintiff Ellenby Technologies, Inc. ("Plaintiff" or "Ellenby") brought this patent infringement suit against Fireking Security Group and four other defendants ("Defendants") on April 10, 2020, asserting infringement of three claims of Plaintiff's patent ("the '983 Patent"), which relates to mechanical improvements in products known as "Smart Safes." The safes are used in convenience stores and other retail businesses to receive and count cash, verify cash value and the validity of the bills, and store the bills until they can be collected by an armored car service or other messenger.

Defendants answered and asserted affirmative defenses and counterclaims on July 20, 2020. (D.E. 24.)  Plaintiff moved to strike and dismiss the affirmative defenses and counterclaims on August 7, 2020.  (D.E. 26.)  That motion became fully briefed on September 21, 2020 (D.E. 40), which happened to be 10 days after the Court entered a schedule for discovery in this matter. (D.E. 39.)  The Court entered the scheduling order after the parties submitted it by agreement, representing that they had made their Rule 26(a)(1) disclosures on September 3, 2020, and that the parties already had served interrogatories and document requests upon each other.  (D.E. 37.)  But the schedule also included a status report date in early November 2020 to determine whether the parties might entertain the possibility of a settlement conference. At that time, the parties reported that they had served certain discovery responses and responsive documents upon each other, but that they were ready for an early settlement conference (D.E. 43); the Court promptly conducted one on December 22, 2020.  (D.E. 49.)  The conference did not result in a settlement, and the Court ordered the parties to confer and file a proposed schedule for remaining discovery.  (*Id.*)

In the parties' joint status report presenting the proposed schedule, Defendants disclosed on January 8, 2021, for the first time that they planned to file a petition before the PTAB for *inter partes* review of the '983 Patent including the three claims at issue in this case, and that they planned to move to stay the litigation pending the outcome of their IPR petition. (D.E. 50.) Defendants next filed a motion for more time to respond to discovery pending their not-yet-filed IPR petition, and on January 25, 2021, the Court granted them until February 15, 2021 to respond to certain outstanding discovery requests. (D.E. 54.) There is some indication in the record that Plaintiff and Defendants were in disagreement as to the adequacy or completeness of certain of Defendants' discovery responses, but their meet-and-confer process was not completed (D.E. 59) by the time Defendants filed their motion to stay the litigation pending their IPR petition. (D.E. 60.)

On March 26, 2021, the Court denied the stay motion without prejudice and recommended that the District Court stay claim construction briefing until after the PTAB rules on whether IPR will be instituted at all. (D.E. 71.) The Court reasoned that a stay is premature before the PTAB has decided whether to institute IPR to begin with, that Defendants' stay request could be considered again if and when IPR is instituted, and that judicial economy would be served by holding off on claim construction briefing until the parties and the Court know whether IPR is being instituted. (*Id.*) The Court also relied on a well-reasoned, unpublished order from former U.S. District (and now Seventh Circuit Court of Appeals) Judge Amy J. St. Eve, deciding that with the PTAB not even having determined whether IPR will be undertaken, staying the litigation is premature. (*Id.*)

The Court has recited the background and posture of this matter to make clear that the Court fully understands and has not misapprehended the posture, which includes the fact that the

parties have undertaken already a significant amount of written discovery which more or less has been interrupted by a discovery dispute (*see* D.E. 59) and Defendants' motion to stay the litigation.

In Defendants' motion to reconsider the denial (without prejudice) of the stay, Defendants argue that the Court committed an error of "apprehension" in suggesting that ongoing discovery might be relevant to the IPR petition and in not accepting Defendants' position that discovery through at least the PTAB's decision on IPR institution (expected in August 2021) would be too burdensome on Defendants, while the requested stay would not prejudice Plaintiff. (D.E. 73.) One day after filing their motion to reconsider, defense counsel sent an email to the courtroom deputy asking for a conference on the motion and on Plaintiff's requested discovery, stating that Defendants filed the reconsideration motion "to correct your Honor's belief that the completion of discovery would not be burdensome as, in fact, there has been a substantial amount of discovery served by Plaintiff that is either in dispute and/or would require extensive time and resources to address. The sheer volume of discovery served is reflected in the attachments to our Motion." (D.E. 74.)

The District Court accepted the magistrate judge's recommendation to stay claim construction briefing until a decision on institution of the IPR. (D.E. 72.)

### B. Legal Standard for Reconsideration Motions

The purpose of a motion to reconsider is narrow. Courts entertain these motions "to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). A motion for reconsideration is proper where the court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th

Cir. 1990). Judge Shadur credited the late U.S. District Judge Dortch Warriner with the phrase error of "apprehension" in explaining why such motions "ordinarily should not – and do not – form the basis for a judicial about-face":

> The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

*LaBouve v. Boeing Co.*, 387 F. Supp. 2d 845, 855 (N.D. Ill. 2005), quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). For his part, Judge Shadur added:

> Despite what [some reconsideration movants] appear[] to think, this Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure. Motions such as this reflect a fundamental misunderstanding of the limited appropriateness of motions for reconsideration.

*LaBouve*, 387 F. Supp. 2d at 855, quoting *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.,* 123 F.R.D. 282, 288 (N.D. Ill. 1988). Or, as Judge Shadur wrote in another decision, "[e]ssentially, the message for those who contemplate filing a motion to reconsider is not simply to say: 'Judge, we think you're wrong. Give it another look.'" *Zakutansky*, 1992 WL 390398, at *1.

Generally speaking, this Court agrees with Judge Shadur's treatment of the classic formulation of how reconsideration motions should be limited to matters in which the initial ruling suffered from some manifest error of fact or law, or in which some truly new legal authority or fact comes to the parties' attention and should change the outcome. Nonetheless, lawyers who read cases like *LaBouve* and *Zakutansky* might reasonably discern a notable judicial disdain for motions to reconsider. Judges naturally are busy with their full dockets, and once they decide an issue, they reasonably might be expected to have little patience for motions that seek a "do-over" and ask them to revisit questions they already answered. That said, as human beings, judges are

capable of error. The late U.S. District Judge John F. Grady was fond of saying to his law clerks that judges finding fault with other judges' opinions was the reason "why they call them opinions." Lawyers, in seeking to represent their clients and make their records, may have tactical or strategic reasons not to raise an issue a second time. But this Court hopes that fear of a judicial rebuke will not be among those reasons. In ruling on the instant motion, this Court undertakes to strike a tone that encourages lawyers, within the bounds of civility, to feel free to tell judges if the lawyers think the judges decided a matter wrongly, or to make the record the lawyers need to make. This Court also believes that in this respect, counsel and parties should receive the fairness they are prepared to give their adversaries. The Court's discretion to revisit a ruling under Rule 54(b) "is subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *U.S. Tobacco Coop., Inc. v. Big South Wholesale of Virginia, LLC*, 899 F.3d 236, 257 (4th Cir. 2018), quoting *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003).

### C. The IPR Process

Our earlier order summarized the IPR process. IPR is a relatively new procedure introduced by the Leahy-Smith America Invents Act ("AIA"), through which the PTAB may review the patentability of one or more claims in a patent. *See* Pub.L. No. 112–29, § 6(a), 125 Stat. 284, 299-304 (2011), codified at 35 U.S.C. §§ 311-319 (2013). This mechanism replaces the previous *inter partes* reexamination procedure and converts the process from an examinational to an adjudicative one. *See Abbott Labs. v. Cordis Corp.,* 710 F.3d 1318, 1326 (Fed. Cir. 2013) (quoting H.R.Rep. No. 112-98, pt. 1, at 46-47 (2011)). Under this new procedure, any party other than the patent owner may file a petition to institute IPR in order to establish that the identified

6

claims are invalid under 35 U.S.C. §§ 102 and/or 103. 35 U.S.C. §§ 311(a)-(b). We will discuss some of the time frames involved in the IPR below, but the initial time frame within which the PTAB is to decide whether to institute IPR is six months from the February 12, 2021 filing of the petition. Staying this matter until PTAB decision on institution, therefore, would stay the case until in or about mid-August 2021.

If the PTAB institutes IPR, the proceeding is conducted before a panel of three technically trained Administrative Patent Judges of the PTAB. *See* 35 U.S.C. §§ 6(a)-(c), 311. The parties are permitted to take limited discovery and respond to each other's arguments; they also have the right to an oral hearing. 35 U.S.C. §§ 316(a).

**II.     Analysis**

The thrust of Defendants' argument, in its email to the Court is that the Court somehow misunderstood the burden associated with Plaintiff's requested discovery.[1] Defendants characterize the discovery as an unreasonable "campaign" of discovery that Plaintiff unleashed as "an avalanche" after having made unreasonable settlement demands that scuttled the settlement conference. (Mot. at 4-5.)[2] Yet Defendants have filed no motion for protective order under Federal

---

[1] The practice of submitting letters to a court is entertained in some jurisdictions, but this Court's preference is for all requests for judicial relief, or statements in support of any request for judicial relief, be made by motion, and not placed in a letter or email. The Court is placing Defendants' email on the court docket so that the public may have full access to the document, as the public is entitled to have with respect to any document intended by a litigant to persuade a court or underpin a judicial decision. *See Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545-46 (7th Cir. 2002).

[2] At this time, we make no determination as to whether any of the outstanding discovery served by Plaintiff might be relevant to an IPR review, should the PTAB opt to institute such a review. Plaintiff contends that some of the discovery it has requested would be relevant and Defendants state outright that "there is nothing in the PTAB rules that would prohibit the parties from engaging in discovery on objective indicia of non-obviousness during the IPR. 37 C.F.R. §§ 42.51-42.65. Rather, this evidence is not only discoverable during an IPR, but is routinely analyzed by the PTAB. *See Lectrosonics, Inc. v. Zaxcom, Inc.*, Case IPR2018-01129, Paper 33 (P.T.A.B. Jan. 24, 2020)." (D.E. 67: Def. Reply in Support of Mot. to Stay ("Def. Reply") at 4.). Therefore, it is at least feasible that some of the discovery Plaintiff seeks could relate to objective indicia of non-obviousness.

7

Rule of Civil Procedure 26 to try to limit that discovery. Instead, they are pressing their argument that no discovery ought to occur at all in light of their IPR petition and their request to stay the case. The Court has reviewed the motion to reconsider and its attachments, and the Court makes no determination as to whether Plaintiff is seeking overly burdensome discovery from Defendants. That determination is more properly made on a Rule 26 discovery motion and not on a motion to stay discovery pending a decision on institution of IPR before the PTAB. Although the nature and extent of pre-institution discovery have some bearing on the factors we will analyze below in considering the stay (such as prejudice to Plaintiff, stage of proceedings, and the extent to which a stay will simplify the case), the Court sees those factors as weighing against a stay, and the Court sees Defendants' complaints about the discovery as being addressable in the ordinary course of the litigation, without a stay – at least for now. The Court is not operating under any misunderstanding or misapprehension about how much discovery is involved, as Defendants incorrectly stated in their email.

Defendants' authority for pre-institution stays is relatively thin or is distinguishable. In *SRAM, LLC v. RFE Holding (Canada) Corp.*, No. 15 C 11362, D.E. 69 (N.D. Ill. Dec. 21, 2016), and in *Rosetta-Wireless Corp. v. Apple, Inc.*, No. 15 C 0799, D.E. 177 (N.D. Ill. July 20, 2016), the courts granted such a stay in relatively brief text orders that did not discuss the factors as they related to whether or not the PTAB had agreed to institute IPR.. In *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 15-cv-1067, 2015 WL 13650951, at *2 (N.D. Ill. May 5, 2015), the court granted a pre-institution stay but did not discuss the prospect that IPR might not be instituted and that thus the litigation would have been stayed for no reason. In *Black & Decker Inc. v. Positec USA, Inc.*, No. 13 C 3075, 2013 WL 5718460, at *1, 3 (N.D. Ill. Oct. 1, 2013), the court granted the stay based on a balancing of factors that included the fact that the movants filed their IPR

8

petition promptly (about three and a half months) after litigation had been instituted. The *Black & Decker* court also did not discuss how a stay until a decision on institution of an IPR might delay the litigation needlessly if the PTAB were to decide not to institute IPR. The Court's March 26 order previously distinguished *Black & Decker* as well as *Ignite USA, LLC v. Pac. Mkt. Int'l, LLC*, No. 14 C 856, 2014 WL 2505166 at *2 (N.D. Ill. May 29, 2014), in which IPR was sought only one month after the filing of the lawsuit. In the instant case, Plaintiffs brought suit in April 2020, and Defendants filed their IPR petition in February 2021, after an unsuccessful settlement conference, the making of initial disclosures, the exchange of written discovery requests, and service of discovery responses and documents, even as Plaintiff has unresolved issues with Defendants' responses, and Defendants have unresolved issues with the scope of the discovery.

Whether to grant a stay of patent litigation pending an IPR petition is a matter for the discretion of the district court. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1427 (Fed. Cir. 1988). As we noted in our initial order, the factors to be considered in deciding a motion to stay patent litigation pending a not-yet-instituted IPR are: (1) whether the stay will unduly prejudice the nonmoving party, (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set, and (3) whether the stay will likely result in simplifying the case before the court. *Multimedia Content Mgt., LLC v. Dish Network, L.L.C.*, No. 6: 18-CV-00207-ADA, 2019 WL 11706231, at *1 (W.D. Tex. May 30, 2019); *see also Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1359–60, 62 (Fed. Cir. 2016) (recognizing, as a fourth factor, the burden litigation would have on the court and parties – as applicable in cases where a party seeks a stay pending IPR review).

With respect to prejudice, the parties disagree about whether Plaintiff would be prejudiced by a stay, but the Court begins from the premise that patent holders have an interest in the timely

adjudication of their infringement claims. *Id.* at *2. As we noted before (D.E. 71), the IPR process involves a statutory time frame in which the PTAB must, under most circumstances, issue its final determination within one year of the institution date. 37 C.F.R. § 42.100(c). However, that one-year period can be extended by up to six months for good cause. *Multimedia Content*, 2019 WL 11706231, at *2. Including the six-month pre-institution time frame, a pre-institution stay that extended past institution could delay the litigation by two years before the appellate process, as the PTAB's decision is appealable to the Federal Circuit. *See* 35 U.S.C. §§ 141(c), 319. When the appellate time frame is included, the additional time frame of a stay is uncertain.[3] Staying the case before IPR institution would delay the case "only" six months, and in this case only four months until mid-August 2021, but the parties' submissions – including the attachments to Defendants' reconsideration motion – indicate that written discovery is now at an important phase, as the discovery Plaintiff seeks is considerable, and the parties' dispute over limitations on that discovery is not resolved. The Court concludes that this phase of discovery should proceed, notwithstanding the possibility that IPR may be instituted in August 2021. Plaintiff's interest in moving this matter closer to a determination of patent rights is enough to warrant denying the requested stay, as the factor of prejudice to Plaintiff weighs against granting the stay in these circumstances. We find this to be so even though a trial date has yet to be set during pandemic conditions in which civil trial dates are commonly not set as promptly as they were before the pandemic.

---

[3] Currently, there may be reason for concern that appeals-related delays associated with PTAB decisions could be greater in the near future, as the U.S. Supreme Court considers whether PTAB judges must be presidentially appointed and confirmed by the U.S. Senate. *See Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 1999), *cert. granted*, No. 19-1458 (U.S. Oct. 13, 2020); Ian Lopez, "Are Patent Judges Unconstitutional? The *Arthrex* Case Explained," *Bloomberg Law* (Jan. 5, 2021) ("The Federal Circuit has vacated dozens of PTAB decisions on appeal since *Arthrex*, demanding the patent board redo proceedings with new panels of now constitutionally appointed judges. The board is holding off on rehearing those decisions until the Supreme Court chimes in, leaving the fate of numerous patents up in the air.") (available at https://news.bloomberglaw.com/ip-law/are-patent-judges-unconstitutional-the-arthrex-case-explained).

The Court's earlier analysis finding that the positioning of Plaintiff and Defendants as direct competitors weighs slightly against granting the stay (D.E. 71) remains unchanged. So does the Court's earlier determination that the phase of the proceedings is a neutral factor in analyzing whether to grant a stay (*id.*), but further discussion is warranted around the time between filing of this lawsuit and Defendants' filing of the IPR petition. On reconsideration and review of additional authorities, the Court places greater weight on the 10-month time frame between institution of this action and Defendants' filing of the IPR petition.

In *Multimedia Content*, the facts cut in different directions for purposes of our analysis of this case. On the one hand, the patent litigation in *Multimedia Content* was much farther along than this case, as a jury trial already was scheduled and the court already had conducted a claim construction hearing. 2019 WL 11706231, at *2. On the other hand, the *Multimedia Content* defendants had filed their IPR petition eight months after bringing the patent suit, a time frame the court considered "long," whereas here that time frame is 10 months. *Id.* The *Multimedia Content* court appeared to be most persuaded, as is this Court, by how a pre-institution stay cannot be said to simplify a matter at a time when the court and the parties do not know if IPR will be instituted. The *Multimedia Content* court, per U.S. District Judge Alan D. Albright, wrote:

> [T]he most important factor bearing on whether to grant a stay in this case is the prospect that the *inter partes* review proceeding will result in simplification of issues before the Court …. The Court finds that this factor strongly favors denying a stay. At the time this Motion was filed, the IPR Petition had not been instituted or denied by the PTAB; therefore, any simplification of the issues at trial after a PTAB decision will likely be minimal. Moreover, Dish admits that since there is no guarantee that the PTAB will grant institution, then there is no guarantee that granting a stay will simplify any issues in this litigation. Thus, were the PTAB to ultimately deny institution, then the trial in this case would be needlessly delayed. Admittedly, if the PTAB does grant institution, then there is the possibility that some claims *might* be invalidated. As a result, Dish can argue nothing more than that there is a *potential* simplification of issues that favors granting a stay.

11

*Id.* at *3, citing *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 WL 1069111, at *4 (E.D. Tex. March 11, 2015). This was the conclusion we reached before, and that Judge St. Eve reached in *Baxter v. Carefusion, et. al.* No. 15 C 9986 at D.E. 64 (N.D. Ill. Sept. 6, 2016). It is the same conclusion reached by numerous other courts that have declined to grant IPR pre-institution stays. *See Wonderland Switzerland AG, v. Britax Child Safety, Inc.,* No. 19-CV-02475-JMC, 2020 WL 7075122, at *2-5 (D.S.C. Dec. 2, 2020) (denying without prejudice a stay where the PTO had not yet acted on the petition for an IPR, and following the majority of courts in concluding that a request to stay before the PTO grants a petition is premature, the court stating that it was "wary of delaying a case while the parties wait for a review that may never come"); *Huawei Technologies Co. Ltd. v. Verizon Communications, Inc.*, No. 20-cv-00030-JRG, 2020 WL 7134088, at *1-2 (E.D. Tex. Nov. 10, 2020) (denying without prejudice to renewal a motion to stay pending an IPR proceedings since the PTO had not yet ruled on the petitions, stating that "[w]here a motion to stay is filed before the PTAB institutes any proceeding, courts often withhold a ruling pending action on the petition by the PTAB or deny the motion without prejudice to refiling in the event that the PTAB institutes a proceeding"); *Trover Group, Inc. v. Dedicated Micros USA*, No. 2:13-cv-1047-WCB, 2015 WL 1069179, at *6 (E.D. Tex. Mar. 11, 2015) ("This Court's survey of cases from the Eastern District of Texas shows that when the PTAB has not yet acted on a petition for *inter partes* review, the courts have uniformly denied motions for a stay."); *Drink Tanks Corp. v. GrowlerWerks, Inc.*, No. 3:16-cv-410-SI, 2016 WL 3844209, at *5 (D. Or. July 15, 2016)) (denying a stay and explaining that the court was "wary of delaying progress on a case while the parties wait for a review that may never come.") The Federal Circuit has expressed no opinion on whether it is a better practice to deny requested stays before IPR review has been instituted, but it has commented that "[w]hile a motion to stay could be granted even before the

12

PTAB rules on a post-grant review petition, no doubt the case for a stay is stronger after post-grant review has been instituted." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316 (Fed. Cir. 2014). The basis for our conclusion would be even stronger if claim construction were concluded and if a trial date were already set, but it is strong nonetheless given the uncertainty over whether IPR will be instituted at all – a factor that numerous courts have found sufficient to deny pre-institution stays.

The Court's review of the body of available federal decisions on motions for pre-institution stays suggests that the weight of authority favors denying them without prejudice during the time frame before the PTAB's decision on IPR. We express no opinion on the merits of a renewed motion to stay if IPR is instituted, and the parties of course have different views on that subject. In sum, there is no manifest error of law or fact in the Court's March 26, 2021 order, and no new legal authority or fact has been presented to suggest a different outcome.

### III. Conclusion

For the foregoing reasons, Defendants' motion to reconsider (D.E. 73) is denied. To the extent the parties are unable to resolve their differences over discovery or discovery scheduling per Local Rule 37.2, they may seek the Court's intervention through a motion to compel.

**SO ORDERED.**

                                                **ENTER:**

                                                **GABRIEL A. FUENTES**
                                                **United States Magistrate Judge**

**DATED: April 13, 2021**