# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ELLENBY TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-2253 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| FIREKING SECURITY GROUP, | ) | |
| FIREKING SECURITY PRODUCTS, LLC, | ) | |
| FIREKING COMMERCIAL SERVICES, LLC, | ) | |
| CORPORATE SAFE SPECIALISTS, LLC, and | ) | |
| PFINGSTEN PARTNERS LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ellenby Technologies designs, manufactures, and sells "smart safes," electronic vaults that small businesses use to keep their cash secure. Ellenby sued a group of competitors (most of which are called "FireKing") for patent infringement.

Defendants filed an answer and advanced three counterclaims. Ellenby, in turn, moved to dismiss the counterclaims. For the reasons stated below, the motion to dismiss is granted in part and denied in part.

## Background

Ellenby makes and markets electronic "smart safes." *See* Cplt., at ¶ 23 (Dckt. No. 1). Smart safes are secure vaults that businesses like convenience stores, gas stations, and fast food restaurants use to store cash. *Id.* at ¶¶ 12, 15. Smart safes replaced old-school "drop safes," which were basically slots for depositing money. *Id.* at ¶ 14.

On the outside, smart safes have a slot where employees insert cash. (It looks like the feeder that consumers use when buying a snack at a vending machine.) Smart safes also have one or two doors. Employees open the doors to access the contents of the safe. *Id*. at ¶¶ 15, 22.

On the inside, a smart safe contains two devices. There is a "bill acceptor," which determines whether the currency is counterfeit or otherwise unacceptable. *Id*. at ¶¶ 15, 17. The other device is called a "bill canister" or a "cash canister," which stores the bills after processing. *Id*. at ¶¶ 16, 25. The safe keeps track of the money, meaning how much is deposited, when, and by whom. *Id*. at ¶ 18. That's presumably why it's called "smart."

This case involves one of Ellenby's patents related to its smart safe business: Patent No. 7,779,983 ("the '983 Patent"). *Id*. at ¶¶ 23–32.

Ellenby alleges that before the '983 Patent, smart safes were typically designed with "a single access door" on the outside, and a single compartment on the inside. *Id*. at ¶ 21. The existence of only one door, and one compartment, caused problems. Anyone who opened that door had complete access to both the bill acceptor *and* the canisters full of cash. *Id*. at ¶ 22. That ready access to cash caused security issues, and related inconveniences. For example, when cash would get jammed in the bill acceptor, employees would have to place a service call, and a technician would have to fix the issue in the presence of an armed guard. *Id*.

The five Claims of the '983 Patent described a safe design with two compartments on the inside, a bill acceptor compartment and a cash canister compartment. *Id*. at ¶ 41. So each device had its own compartment and its own door. *Id.* As described in Claim 3, the door to the cash canister compartment had a built-in shelf, which limited access to the cash canister from the bill acceptor compartment when the canister compartment door was closed. *Id.* at ¶ 25. The

2

punchline seems to be that employees could access the cash *acceptor* without accessing the cash itself. The following diagrams give a rough sense of how the new design worked:



*See* U.S. Patent No. 7,779,983 (Dckt. No. 1-1, at 3–5 of 11).

According to Ellenby, this design "obviated the need for a separate service call in most cases, because it allowed authorized store personnel – such as a manager – to service any mechanical problems with the bill acceptor – such as a bill jam – without allowing that person access to the cash-receiving canister." *Id*. at ¶ 26.

But Ellenby doesn't make the only smart safe on the market. Defendants FireKing Security Group (an unincorporated entity), FireKing Commercial Services, LLC, FireKing Security Products, LLC, and Corporate Safe Specialists, Inc. make and sell competing brands of safes. *Id*. at ¶ 40. Those brands include the Summit, Ascent UNA, CX, and NKL Autobank Series. *Id*.

Those four entities are owned by Defendant Pfingsten Partners LLC, a private equity firm that owns and manages various portfolio companies. *Id*. at ¶¶ 33–38. The complaint refers to all

five companies together as "the Defendants," and the four wholly-owned companies as "FireKing" or "the FireKing entities," so this Opinion will too.

Ellenby believes that the Defendants are infringing the '983 Patent, so it filed suit and brought four counts. Count I alleges that the FireKing entities are infringing Claims 3, 4, and 5 of the '983 Patent by making and selling competing brands of smart safes. *Id*. All of the accused FireKing safes have the following features: (1) at least one "bill acceptor for accepting bills mounted in a first compartment within a housing," (2) at least one "bill canister for storing bills mounted in a second compartment within the housing," and (3) a door to the bill canister compartment that includes a built-in shelf, which limits access to the bill canister and its compartment. *Id*. at ¶¶ 43–46.

Count II alleges that the FireKing entities are inducing infringement of Claims 3, 4, and 5 of the '983 Patent by selling the accused products to third parties including armored car companies, banks, restaurants, and stores. *Id*. at ¶¶ 66–67, 73. Count III alleges that Pfingsten is liable for all of the conduct described in Counts I and II. *Id*. at ¶ 78. Finally, Count IV alleges that all of the Defendants are liable for willful infringement. *Id*. at ¶¶ 98–99.

Defendants filed a joint answer, which included fourteen affirmative defenses and three counterclaims. *See generally* Defs.' Answer, Affirmative Defenses and Counterclaims (Dckt. No. 24). All three counterclaims seek declaratory relief. *See generally* Counterclaims (Dckt. No. 24). Counterclaim I seeks a declaratory judgment that Defendants did not infringe the '983 Patent. Counterclaim II alleges that the '983 Patent is invalid, and Counterclaim III alleges that the '983 patent is unenforceable.

Ellenby moved to dismiss all three counterclaims. *See generally* Pl.'s Mtn. to Dismiss Counterclaims and Strike Affirmative Defenses (Dckt. No. 26).

**Discussion**

All three counterclaims fall under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. The Act vests district courts with the option, but not the obligation, to declare the rights of the parties. District courts "*may* declare the rights and other legal relations of any interested party seeking such declaration." *See* 28 U.S.C. § 2201(a) (emphasis added). "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

Ellenby argues that this Court should dismiss all three counterclaims because (1) they do not raise any issues not already raised by the complaint, and (2) to the extent that they do raise new issues, they do not present a justiciable case or controversy. Ellenby also makes a few arguments that are specific to Counterclaim III. It argues that Counterclaim III fails to state a claim, and alleges self-defeating facts.

The Court addresses each argument in turn.

**I.     Redundancy**

First, Ellenby argues that the Court should refuse to exercise jurisdiction over all three counterclaims because they do not raise any issues that aren't already raised in the existing suit. The gist is that the counterclaims are a mirror image of the complaint. That is, Plaintiff alleges infringement, and Defendants allege *non*-infringement. So, the counterclaims offer no value-add.

Courts may refuse to exercise jurisdiction over declaratory counterclaims if they are "entirely redundant of the opposing party's claim." *See* 3 James Wm. Moore *et al.*, *Moore's Federal Practice* § 13.41 (3d ed. 2020); *see also United States v. Zanfei*, 353 F. Supp. 2d 962,

964–65 (N.D. Ill. 2005) ("The Court's imposition of a declaratory judgment in this matter would be futile because [defendant's] counterclaim is repetitious and unnecessary: it merely restates an issue already before this Court."); *Rayman v. Peoples Sav. Corp.*, 735 F. Supp. 842, 852 (N.D. Ill. 1990); *Green Bay Packaging, Inc. v. Hoganson & Assocs., Inc.*, 362 F. Supp. 78, 82 (N.D. Ill. 1973) ("It is clear to this Court that Counts I and III of the counterclaim merely restate an issue already before this Court. That issue will be determined by the litigation of the instant complaint. It is well settled that such repetitious and unnecessary pleadings should be stricken.") (Bauer, J.). But striking a counterclaim for redundancy is not mandatory, either. *See* Fed. R. Civ. P. 12(f) (providing that a district court "may" strike any "redundant" material in a pleading).

The counterclaims against Ellenby are not entirely redundant of Ellenby's own complaint. The complaint and the counterclaims do overlap, but the counterclaims also raise issues not raised in the complaint.

*Part* of Counterclaim I (covering Claims 3–5) is redundant of the complaint. Count I of the complaint alleges that the Defendants are infringing Claims 3–5 of the '983 Patent, and Counterclaim I seeks a declaration that Defendants are *not* infringing Claims 1–5 of the '983 Patent. So, both Count I and Counterclaim I address whether Defendants are infringing Claims 3, 4, and 5 of the '983 Patent.

But Counterclaim I also covers additional terrain, seeking a declaration that Defendants are not infringing Claims 1 and 2 of the '983 Patent. Ellenby's complaint does not expressly allege that Defendants are infringing Claims 1 and 2. To that extent, Counterclaim I offers something new and is not redundant. So it survives.

Counterclaims II and III raise new issues: whether Claims 1–5 of the '983 Patent are invalid, or unenforceable. It is possible to resolve this case without reaching those issues at all.

For example, if the Court hypothetically found that Defendants did not infringe Claims 3, 4, and 5 of the '983 Patent, there would be no need to address the validity or enforceability of that patent. *See* 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2761 (4th ed. 2020) ("[E]ven if the patentee sues for infringement, defendant may counterclaim for a declaration of invalidity and noninfringement. In that way, the defendant is protected against the possibility that the patentee will dismiss the suit or that the infringement action will not resolve all of the issues between the parties."). Counterclaims II and III cover new ground, so they stay in the case.

In sum, the Court declines to dismiss the counterclaims based on redundancy.

## II. Justiciability

In the alternative, Ellenby argues that the counterclaims are not justiciable because they do not satisfy the "case or controversy" requirement of Article III.

"The Declaratory Judgment Act . . . allows federal courts, in their discretion, to render declaratory judgments only where there exists an actual controversy: the latter requirement is a jurisdictional prerequisite of constitutional dimensions." *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995) (cleaned up). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal citation and quotation marks omitted). A court can only declare rights in real-world disputes.

"An actual suit affirmatively asserting the claims is not a requirement for an Article III case or controversy." *Ameranth, Inc. v. Domino's Pizza, LLC*, 792 F. App'x 780, 784 (Fed. Cir.

7

2019), *cert. denied*, 141 S. Ct. 249 (2020). Nor is a "reasonable apprehension of suit," although it may be a factor. *See Medimmune*, 549 U.S. at 132 n.11; *see also Asia Vital Components Co. v. Asetek Danmark A/S*, 837 F.3d 1249, 1252 n.1 (Fed. Cir. 2016) (recognizing that a "reasonable apprehension of imminent suit" is no longer a prerequisite, although it may be a factor that can satisfy Article III's controversy requirement).

In patent cases, "the existence of a case or controversy must be evaluated on a claim-by-claim basis." *Jervis B. Webb Co. v. S. Sys., Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984) (citations omitted); *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1307 (Fed. Cir. 2012) (same). "All of the circumstances are considered in determining the existence of a case or controversy." *Ameranth*, 792 F. App'x at 783.

Here, there is no doubt that there is a case or controversy with respect to the portions of Counterclaims I, II, and III that involve Claims 3, 4, and 5. After all, Ellenby sued Defendants for infringement, so Ellenby is the one bringing a case and raising a controversy about those three Claims. *See MedImmune*, 549 U.S. at 127; *see also Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993) ("If . . . a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support jurisdiction of a complaint, or a counterclaim, under the Act.") (emphasis in original).

The slightly tougher question is whether there is a case or controversy with respect to Claims 1 and 2.

Defendants argue, and the Court agrees, that there is a case or controversy with respect to Claim 1. As Defendants point out, Claim 3 is a *dependent* claim. A dependent claim in a patent "contain[s] a reference to a claim previously set forth and then specif[ies] a further limitation of the subject matter claimed." *See* 35 U.S.C. § 112. Claim 3, which reads as follows, is dependent

on Claim 1: "The electronic drop safe of claim 1 where said reinforcement shelf is incorporated on said access door." *See* Cplt., at ¶ 41 (Dckt. No. 1). By statute, "[a] claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers." *See* 35 U.S.C. § 112. Therefore, when Ellenby sued for infringement of Claim 3, it created a case or controversy with respect to all the limitations in Claim 1 as well. Claim 1 is baked into Claim 3, so if there is a case or controversy about Claim 3, there is necessarily a case or controversy about Claim 1, too.

There is a case or controversy with respect to Claim 2 as well, for the same reason. Like Claim 3, Claim 2 is also a dependent claim referencing Claim 1. Claim 2 reads: "The electronic drop safe of Claim 1 where said lock can be mechanical or electronic." *See* Cplt., at ¶ 41 (Dckt. No. 1). As discussed above, when Ellenby sued for infringement with respect to Claim 3, it created a case or controversy with respect to all the limitations in Claim 1. There is a case or controversy about Claim 3, and in effect, Claim 3 brought Claim 1 along for the ride. And Claim 1, in turn, brought along Claim 2.

In other words, Claim 1 is the foundation for Claim 2 and Claim 3. If Claim 3 is at issue, then Claim 1 is at issue. And if Claim 1 is at issue, then Claim 2 is at issue. So, by alleging infringement of Claim 3, Ellenby necessarily roped in Claim 1 and, by extension, Claim 2 as well.

## III. Counterclaim III

Finally, Ellenby makes two arguments against the third counterclaim. Counterclaim III alleges that Patent '983 is unenforceable because Ellenby engaged in certain "inequitable conduct" before the Patent and Trademark Office during the application process. *See* Counterclaims, at ¶ 28 (Dckt. No. 24).

"A determination of inequitable conduct rests on two threshold findings: (1) that the applicant breached its duty of candor and good faith by failing to disclose material information to the PTO; and (2) that, in so doing, the applicant intended to deceive or mislead the PTO examiner into granting the patent." *Bone Care Int'l, LLC v. Pentech Pharms., Inc.*, 741 F. Supp. 2d 854, 858 (N.D. Ill. 2010), *amended in part*, 2010 WL 4102264 (N.D. Ill. 2010); *see also Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008) (citations omitted).

Federal regulations explain how an applicant can satisfy the duty to disclose. "The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§ 1.97(b)–(d) and 1.98." *See* 37 C.F.R. § 1.56. In other words, an applicant has fulfilled its duty if it submits all information material to patentability through the process described in two other regulations: §§ 1.97(b)–(d) and 1.98.

Section 1.98 requires applicants to disclose all of that material information in a document known as an "information disclosure statement." *See* 37 C.F.R. § 1.98. Information is "material to patentability when it is not cumulative to information already of record or being made of record in the application," or when it refutes or is inconsistent with a position taken by the applicant. *See* 37 C.F.R. § 1.56.

Counterclaim III is about Ellenby's duty to disclose. Basically, Defendants allege that Ellenby violated its duty to disclose relevant prior art when it applied for the '983 Patent.

The '983 Patent is part of a larger patent family that also includes the '832 Patent. *See* Counterclaims, at ¶ 28 (Dckt. No. 24). Ellenby submitted the application that would become the '832 Patent first. *Id*. When Ellenby submitted that application, it submitted an "information

10

disclosure statement" as required by 37 C.F.R. §§ 1.97(b), 1.98. After reviewing Ellenby's application, the patent examiner informed Ellenby that its Statement had failed to disclose a particular patent – which the Defendants refer to as the "Stinson" patent – that the examiner considered pertinent to the application. *Id*.

Later, Ellenby submitted a "continuation application," including the claims that resulted in the '983 Patent. *Id.*; *see also* 4 John Gladstone Mills III *et al.*, *Patent L. Fundamentals* § 15:7 (2d ed. 2021) ("After the initial filing of a patent application and its subsequent examination by a patent examiner, the applicant may find that it is not immediately possible to obtain an allowance of the claimed subject matter of the invention. The applicant may find that the desired allowance would be possible if the application were refiled with some minor corrections or amendments. Such a refiled application is generically called a 'continuation application.'"). Ellenby submitted an "information disclosure statement" this time as well. *See* Counterclaims, at ¶ 28 (Dckt. No. 24). But once again, Ellenby's continuation application did not mention the Stinson patent.

That omission is the basis for the counterclaim. Defendants allege that when Ellenby filed the continuation application for the '983 Patent, Ellenby knew about the Stinson patent because the original examiner for the '832 Patent had brought that patent to its attention. *Id.* But Ellenby didn't mention the Stinson patent in its continuation application. So, as Defendants see it, Ellenby intentionally omitted the Stinson patent, and thus acted "with intent to deceive the examiner into allowing the '983 Patent to issue." *Id*. And deceiving the PTO means that the patent is unenforceable.

Ellenby argues for dismissal on two grounds. First, it argues that Defendants have failed to allege facts with particularity as required by Rule 9(b).

Counterclaim III contains an allegation of fraud, so it is subject to the heightened pleading standard of Rule 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b). The rule applies to any "alleg[ation]" of fraud, and is not limited to a *claim* of fraud. *Id.*; *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) ("[T]he practices alleged in Pirelli's complaint constitute fraudulent activity, and the dictates of Rule 9(b) apply to allegations of fraud, not claims of fraud."); *see also Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ("Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations.") (citations omitted).

"Rule 9(b) requires that facts such as 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff' be alleged in detail." *Heffernan v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (quoting *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)). "In adding flesh to the bones of the word particularity, we have often incanted that a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud – 'the first paragraph of any newspaper story.'" *Pirelli*, 631 F.3d at 441–42 (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)).

Here, Defendants have alleged more than enough facts to survive a challenge under Rule 9(b). They give the "who" (Ellenby), "what" (failing to disclose the Stinson patent), when (submitting their application), and "where" (in the continuing application form). The counterclaim contains enough details to clear the hurdle of particularity.

Second, Ellenby argues that Defendants have pled themselves out of court by alleging facts that invalidate their own counterclaim. Defendants allege that Ellenby filed an original application (which resulted in the claims associated with '832 Patent) and a continuation application (which resulted in the claims associated with the '983 Patent). *See* Counterclaims, at ¶ 28 (Dckt. No. 24). They also claim that when the patent examiner reviewed the original application, he or she "cited" a particular patent (Stinson) as relevant to the application. *Id.*

Ellenby argues that because the Stinson patent was "cited" by the examiner in the original application, and the second application was filed as a "continuation" application, Ellenby did not have a duty to disclose it. *See* Pl.'s Brief in Support of Mtn. to Dismiss, at 7–10 (Dckt. No. 27). Recall, applicants have a duty to disclose only material information, and information is "material to patentability when it is not cumulative to information already of record or being made of record in the application," or when it refutes or is inconsistent with a position taken by the applicant. *See* 37 C.F.R. § 1.56. The USPTO Manual of Patent Examining Procedure explains the duty to disclose prior art:

> When filing a continuing application that claims benefit under 35 U.S.C. 120 to a parent application (other than an international application that designated the U.S.), it will <u>not</u> be necessary for the applicant to submit an information disclosure statement in the continuing application that lists the prior art cited by the examiner in the parent application unless the applicant desires the information to be printed on the patent issuing from the continuing application (for continued prosecution applications filed under 37 CFR 1.53(d), see subsection A.1. below). The examiner of the continuing application will consider information which has been considered by the Office in the parent application.

*See* MPEP § 609.02 (9th ed. rev. June 2020) (emphasis in original). In other words, when prior art is cited by an examiner in a parent application, there is no duty to disclose it in the continuation application, too.

Defendants do not muster much of a response. They include a sentence in their brief on this issue, making the blanket assertion that the "mere citation to the Stinson reference by the Examiner in the parent '832 Patent application" does not obviate Ellenby's duty to disclose. *See* Defs.' Resp. to Mtn. to Dismiss, at 10 (Dckt. No. 36). They also cite two cases, but neither is on point. Defendants rely on a section in *Exergen v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1329 (Fed. Cir. 2009). But the Federal Circuit merely explained why the claim at issue there, which alleged that the other side had engaged in misrepresentation, was factually inadequate. *See Exergen*, 575 F.3d at 1329 ("Turning now to SAAT's pleading, we agree with the district court that the allegations are deficient with respect to both the particularity of the facts alleged and the reasonableness of the inference of scienter. We begin with the factual deficiencies, of which we note three."). In the other case, *Intellect Wireless, Inc. v. HTC, Corp.*, 732 F.3d 1339 (Fed. Cir. 2013), the Federal Circuit held that a patent was unenforceable when an applicant filed an "original declaration [that] contain[ed] multiple unmistakably false statements," and then "failed to correct the falsehoods in the original declaration" in a sufficiently obvious manner. *See Intellect Wireless*, 732 F.3d at 1342–43. Neither case lends much of a hand here.

Defendants' own allegations establish that Ellenby had no duty to disclose the Stinson patent in the continuation application because it was already cited by the patent examiner in the parent application. Therefore, the Court concludes that Defendants have pled themselves out of court, and Counterclaim III is dismissed.

## Conclusion

The Court grants Ellenby's motion to dismiss Counterclaim III, but denies the motion with respect to Counterclaims I and II.

14

Date: June 28, 2021

Steven C. Seeger
United States District Judge